UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-62089-CIV-COHN-SELTZER

HOWARD MOSS, Individually and on Behalf
of All Others Similarly Situated,

                 Plaintiff,

   vs.

WALGREEN CO.,

                 Defendant.

_____/

**PLAINTIFF'S RESPONSE AND INCORPORATED MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## TABLE OF CONTENTS

**PAGE**

I.      INTRODUCTION ..................................................................................................1

II.     STANDARD OF REVIEW ..................................................................................3

III.    STATEMENT OF FACTS ...................................................................................3

IV.     PLAINTIFF'S CAUSES OF ACTION ................................................................6

      A.      FDUTPA ...................................................................................................6

            1.      Courts Are Required to Liberally Construe FDUTPA ...............6

            2.      At a Minimum, Plaintiff Is "Aggrieved" and Therefore States a Claim for Relief ......................................................................7

            3.      Plaintiff's Purchase of Full Action Is, in and of Itself, an "Actual Injury" Under FDUTPA ........................................................8

      B.      Breach of Express Warranty ...................................................................9

V.      MEMORANDUM OF LAW ..............................................................................10

      A.      Plaintiff Does Not Seek to Stand in the FDA's Shoes..........................10

      B.      Plaintiff Has Standing to Bring His Lawsuit and has Alleged an Injury-in-Fact.............................................................................................................14

VI.     CONCLUSION..................................................................................................15

# TABLE OF AUTHORITIES

**CASES**                                                                                    **PAGE**

*Am. Coach Lines of Orlando, Inc. v. N. Am. Bus Indus., Inc*.,
   No. 6:09-CV-1999-Orl-19GJK, 2010 WL 3958692 (M.D. Fla. Oct. 08, 2010)...............10

*Anden v. Litinsky*,
   472 So. 2d 825 (Fla. 4th DCA 1985) .................................................................................9

*Andrx Pharms. v. Biovail Corp*.,
   175 F. Supp. 2d 1362 (S.D. Fla.  2001) ...........................................................................11

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009).................................................................................................2, 11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).....................................................................................................2, 11

*Collins v. DaimlerChrysler Corp*.,
   894 So. 2d 988 (Fla. 5th DCA 2004) ................................................................................9

*Davis v. Powertel, Inc.*,
   776 So. 2d 971 (Fla. 1st DCA 2000) ..............................................................................8, 9

*Fellner v. Tri-Union Seafoods, L.L.C*.,
   Civil Action No. 06-CV-0688 (DMC), 2010 WL 1490927
   (D.N.J. Apr. 13, 2010) .......................................................................................................6

*Fitzpatrick v. Gen. Mills, Inc.*,
   263 F.R.D. 687 (S.D. Fla. 2010)........................................................................................3

*FTC v. Direct Mktg. Concepts, Inc*.,
   569 F. Supp. 2d 285 (D. Mass. 2008), *aff'd*, 624 F.3d 1 (lst Cir. 2010).............................1

*Gritzke v. M.R.A. Holding, LLC*,
   No. 4:01-cv-495-RH, 2002 WL 32107540 (N.D. Fla. Mar. 15, 2002)...........................7, 8

*Grovenor House, LLC. v. E.I. Du Pont De Nemours & Co*.,
   No. 09-21698 CIV, 2010 WL 883647 (S.D. Fla. Mar. 08, 2010)....................................10

*Hoskins v. Jackson Grain Co*.,
   63 So. 2d 514 (Fla. 1953)..................................................................................................9

*In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig*.,
   701 F. Supp. 2d 356 (E.D.N.Y. 2010) .......................................................................11, 12

*In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig*.,
   590 F. Supp. 2d 1282 (C.D. Cal. 2008) ...........................................................................12

*Jackson v. Balanced Health Prods., Inc.*,
 No. C 08-05584 CW, 2009 WL 1625944 (N.D. Cal. June 10, 2009)................................12

*Lawrence v. Dunbar*,
 919 F.2d 1525 (11th Cir. 1990) ........................................................................................3

*Loreto v. Procter & Gamble Co.*,
 --- F. Supp. 2d ----, No. 1:09-cv-815, 2010 WL 3471752
 (S.D. Ohio Sept. 3, 2010)................................................................12, 13, 14, 15

*Mack v. Bristol-Myers Squibb Co.*,
 673 So. 2d 100 (Fla. 1st DCA 1996) ...............................................................................1

*Samuels v. King Motor Co.*,
 782 So. 2d 489 (Fla. 4th DCA 2001) ...............................................................................7

*Scott v. Capital One Bank*,
 No. 8:08-cv-132-T-30EAJ, 2008 WL 2157037 (M.D. Fla. May 20, 2008) .......................8

*Smith v. Wm. Wrigley Jr. Co.*,
 663 F. Supp. 2d 1336 (S.D. Fla. 2009) .................................................................. *passim*

*Tuckish v. Pompano Motor Co.*,
 337 F. Supp. 2d 1313 (S.D. Fla. 2004) ............................................................................7

*Turner Greenberg Assocs., Inc. v. Pathman*,
 885 So. 2d 1004 (Fla. 4th DCA 2004)..............................................................................8

*Veal v. Crown Auto Dealerships, Inc.*,
 236 F.R.D. 572 (M.D. Fla. 2006)......................................................................................8

## STATUTES, RULES AND REGULATIONS

15 U.S.C. §§41, *et seq.*...........................................................................................................7

21 U.S.C. §§301, *et seq.*.................................................................................2, 10, 11, 12, 13

Federal Rule of Evidence 201 .................................................................................................6

Fed. Rules of Civil Procedure
 Rule 12(b)(1).....................................................................................................................3
 Rule 12(b)(6).....................................................................................................................3

Fla. Stat. §§501.201 *et seq.*........................................................................................ *passim*

Fla. Stat. §501.202 ..................................................................................................................7

Fla. Stat. §501.203 ..................................................................................................................7

Fla. Stat. §501.204(2)..................................................................................................................1

Fla. Stat. §501.211(1)..................................................................................................................7

Fla. Stat. §501.211(2)..................................................................................................................7

Plaintiff Howard Moss ("Plaintiff") respectfully files the instant response and incorporated memorandum of law in opposition to the motion to dismiss filed by Defendant Walgreen Co. "Walgreen" or "Defendant"), [Dkt. Nos. 20-21].  In support thereof, Plaintiff states:

## I.    INTRODUCTION

This is a straightforward false advertising case against Defendant for its mouthwash advertised and marketed as "Walgreens Full Action Mouth Wash" (hereinafter "Full Action"). Plaintiff sues Defendant under Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§501.201 *et seq*., ("FDUTPA"), and alleges that Defendant falsely markets and advertises Full Action with the claim that it "Helps fight visible plaque above the gum line" (hereinafter referred to "Full Action Gum Line Plaque Claim") when, in fact, Defendant has no scientific substantiation for this claim.  [Dkt. No. 1, ¶¶11].

To be sure, scientific substantiation is the guidepost for such consumer product claims under FDUTPA since FDUTPA follows, *inter alia*, the Federal Trade Commission's ("FTC") guidelines in determining whether a claim is deceptive and unfair.  Fla. Stat. §501.204(2); *accord Mack v. Bristol-Myers Squibb Co.*, 673 So. 2d 100, 104 (Fla. 1st DCA 1996).  The FTC's standards require appropriate substantiation for an affirmative factual claim like Defendant's Full Action Gum Line Plaque Claim.  *See generally FTC v. Direct Mktg. Concepts, Inc*., 569 F. Supp. 2d 285, 297-300 (D. Mass. 2008), *aff'd*, 624 F.3d 1 (lst Cir. 2010) (describing standards).  Thus, Plaintiff alleges that because Defendant does not have substantiation under the FTC substantiation standard for its Full Action Gum Line Plaque Claim, the claim violates FDUTPA.  Plaintiff's secondary claim for breach of express warranty follows this same logic.  *See Smith v. Wm. Wrigley Jr. Co*., 663 F. Supp. 2d 1336, 1341-43 (S.D. Fla. 2009).

Defendant's argument in support of dismissal rings hollow. Specifically, Defendant contends that Plaintiff has not pled that he has personally been affected by the Full Action Gum Line Plaque

Claim and that, therefore, he does not have standing to seek redress against it. This is, of course, patently false. Plaintiff specifically pled that he "was exposed to FULL ACTION advertising claims, purchased FULL ACTION, and suffered injury in fact and lost money as a result of the unfair trade practices described herein." [Dkt. No. 1, ¶17]. Indeed, Plaintiff's allegation that he paid an unfair price premium for Full Action, [Dkt. No. 1, ¶¶14, 31], is consistent with this Court's ruling against Wrigley in a similar false advertising case regarding a chewing gum product. *See Wrigley*, 663 F. Supp. 2d at 1339-41& n.3.

Defendant also seeks to confuse the issues by alleging that Plaintiff's lawsuit is an end-run around the jurisdiction of the federal Food & Drug Administration ("FDA"). That is, Defendant contends that Plaintiff is attempting to assert a cause of action based on a violation of FDA rules and the Food, Drug and Cosmetic Act, 21 U.S.C. §§301, *et seq*. ("FDCA"), which only the FDA has the authority to enforce, not Plaintiff. Such is not the case, however.

The FDA is only pertinent as background under the Supreme Court's pleading requirements set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). Given that precedent, Plaintiff included as background information in the complaint the fact that even the FDA sent Defendant a cease and desist letter regarding the purported "active ingredient" in Full Action, sodium fluoride. However, Plaintiff's claim is not based on the FDA's letter or on the FDA's purported issue with sodium fluoride. Plaintiff is not claiming that Defendant is illegally advertising sodium fluoride as promoting the Full Action Gum Line Plaque Claim. Rather, as stated above, Plaintiff's lawsuit is simply based on the fact that Defendant does not have substantiation for the Full Action Gum Line Plaque Claim.

Thus, for the reasons more fully stated below, this Court should deny Defendant's motion to dismiss in its entirety.

## II.       STANDARD OF REVIEW

Defendant has moved to dismiss under Rule 12(b)(1) and 12(b)(6).  The Eleventh Circuit has articulated the standard of review for a motion to dismiss under Rule 12(b)(1).  *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990).  Essentially there are two forms of Rule 12(b)(1) motion – a facial attack and a factual attack.  *Id.*  For the facial attacks, the Court is required to take the allegations in the complaint as true and in the light most favorable to Plaintiff.  *Id*.  For factual attacks, the Court should allow for ample discovery in order to vet the factual basis for dismissal.  *Id*. Here, Defendant makes a facial attack.

Many courts in this district have articulated the standard of review for a motion to dismiss under Rule 12(b)(6).  Because this Court's ultimate analysis in *Wrigley* is instructive here, Plaintiff adopts the standard of review set forth in *Wrigley*.  *Wrigley*, 663 F. Supp. 2d at 1338.

## III.      STATEMENT OF FACTS

Defendant sells a run-of-the-mill Antiseptic product, which the public readily recognizes, and products like Full Action, which is a proverbial step-up in price and in (purported) quality from the general antiseptic.  [Dkt. No. 1, ¶¶3, 15, 31].  Plaintiff's claim is that Defendant is using a false advertising and marketing campaign to induce consumers to choose the step up from Defendant's standard Antiseptic product (and spend more money) based on the message that Full Action "helps fight visible plaque above the gum line." [*See generally* Dkt. No. 1,¶¶3-16, 19-31].  To be sure, Defendant does **not** advertise that its Antiseptic product " helps fight visible plaque above the gum line" – this claim is unique to the more expensive Full Action product. *Id*.  Indeed, as alleged in the complaint, Defendant charges a $1.00 premium for its Full Action product over and above what Defendant charges for its run-of-the-mill Antiseptic product. [Dkt. No. 1, ¶31].  Plaintiff alleges that consumers pay this premium because of the Full Action Gum Line Plaque Claim.  *See*, *e.g.*, *Fitzpatrick v. Gen. Mills, Inc.*, 263 F.R.D. 687, 697 (S.D. Fla. 2010) ("The Court is not persuaded

3

that the bulk of Florida consumers made the decision to purchase Yo-Plus, which is priced significantly higher than regular Yoplait yogurt, for reasons unrelated to its purported digestive health benefits. Indeed, the most obvious reason why consumers would buy Yo-Plus is that it promises something extra, and that something extra is a digestive health benefit.").  And the heart of this case is Plaintiff's allegation that this Full Action Gum Line Plaque Claim is false.

Specifically, on the bottles of both run-of-the-mill Antiseptic and Full Action, there are "active" and "inactive" ingredients.  For Full Action, Defendant claims that the active ingredient is "sodium fluoride."  On the other hand, Defendant's Antiseptic product does not contain "sodium fluoride."  Importantly, moreover, Defendant advertises Full Action as having a property that "helps fight visible plaque above the gum line" whereas Defendant does not make this same claim for its Antiseptic product.  This is all readily apparent from the labels of Defendant's Antiseptic and Full Action products themselves:

[Remainder of Page Left Blank Intentionally]

**Walgreens Antiseptic**                                    **Walgreens FULL ACTION**

*(front of label)*





*(back of label)*





Because Full Action contains sodium fluoride as an active ingredient, whereas run-of-the-

mill Walgreens Antiseptic does not, and because Full Action contains the message "Helps fight

visible plaque above the gum line," where as run-of-the-mill Walgreens Antiseptic does not, the FDA concluded that Defendant is claiming that the sodium fluoride in Full Action is the ingredient that allows Full Action to help fight visible plaque above the gum line.  [Dkt. No. 1, ¶20].[1]  And because the FDA also concluded, *inter alia*, that sodium fluoride is not proven to do this, the FDA sent Defendant a cease and desist letter regarding Defendant's use of sodium fluoride to advertise the anti-plaque qualities of Full Action.  *Id.*

Be that as it may, Plaintiff has sued Defendant for a different reason than what is stated in the FDA letter.  As stated above, Plaintiff's claim is that Defendant's Full Action "helps fight visible plaque above the gum line" message is false and not substantiated under the FTC standards applicable to FDUTPA.  [Dkt. No. 1, ¶¶29-31].  Moreover, not even Defendant itself contends that it has been given the authority by any federal agency to claim that Full Action "helps fight visible plaque above the gum line."  There is no such authority.

## IV.    PLAINTIFF'S CAUSES OF ACTION

### A.    FDUTPA

Plaintiff's first theory is under FDUTPA.  [Dkt. No. 1, ¶¶47-56].  The mechanics and legal standards of this claim are as follows:

### 1.    Courts Are Required to Liberally Construe FDUTPA

Florida enacted FDUTPA as "a consumer protection law intended to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the course of any trade or commerce."

---

[1]    *See also* http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ucm227381.htm (last visited Jan. 28, 2011).  This Court can take judicial notice of this FDA letter under Federal Rule of Evidence 201.  *See*, *e.g.*, *Fellner v. Tri-Union Seafoods, L.L.C.*, Civil Action No. 06-CV-0688 (DMC), 2010 WL 1490927, at *6 n.8 (D.N.J. Apr. 13, 2010) (taking judicial notice of FDA documents regarding mercury in fish).

*Tuckish v. Pompano Motor Co.*, 337 F. Supp. 2d 1313, 1319 (S.D. Fla. 2004); *see also* Fla. Stat.

§501.202.  A cause of action under FDUTPA can be based on either:

> (a) Any rules promulgated pursuant to the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§41, *et seq*.;
>
> (b) The standards of unfairness and deception set forth and interpreted by the Federal Commission or the federal courts; or
>
> (c) Any law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive or unconscionable acts or practices.

*Tuckish*, at 1319-20; *see also* Fla. Stat. §501.203.

In the interests of consumer protection, courts must liberally construe FDUTPA.  *See Samuels v. King Motor Co.*, 782 So. 2d 489, 499 (Fla. 4th DCA 2001) ("While the Legislature does not define what 'an unfair or deceptive act' is, it has mandated that FDUTPA is to be liberally construed.").

### 2.   At a Minimum, Plaintiff Is "Aggrieved" and Therefore States a Claim for Relief

Under FDUTPA, "[w]ithout regard to any other remedy or relief to which a person is entitled, ***anyone aggrieved*** by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part."  Fla. Stat. §501.211(1).  On the other hand, FDUTPA also states that "a person who has suffered loss as a result of a violation of this part . . . may recover actual damages."  Fla. Stat. §501.211(2).  Thus, by its plain terms, FDUTPA permits a broader scope of persons to obtain equitable relief than actual damages.  *See Gritzke v. M.R.A. Holding*, *LLC*, No. 4:01-cv-495-RH, 2002 WL 32107540, at *1(N.D. Fla. Mar. 15, 2002).  In *Gritzke*, for example, the court denied the defendant's motion to dismiss and held that the plaintiff could maintain an action under FDUTPA despite the fact that he did not purchase the product at issue but instead had her likeness misappropriated by the product's advertisements.  *Id.* at *3-4.  In

so doing, *Gritzke* recognized that the notion of being aggrieved under FDUTPA can broadly extend to those who are impacted by a defendant's deceptive conduct.  In fact, a consumer need not even stand to benefit from equitable relief to properly allege a FDUTPA claim.  *See Davis v. Powertel, Inc.*, 776 So. 2d 971, 975 (Fla. 1st DCA 2000) ("The statute is clear on its face.  It merely requires an allegation that the consumer is in a position to complain (that he or she is aggrieved by the alleged violation). . . . Nothing in the statute requires proof that the declaratory or injunctive relief would benefit the consumer filing the suit.").

Thus, however far the line for being "aggrieved" under FDUTPA may ultimately extend, Plaintiff is well within its scope here since he actually purchased Full Action in reliance on Defendant's false advertisements. [Dkt. No. 1, ¶¶17, 53].  Therefore, Plaintiff properly alleges a claim under FDUTPA.

### 3. Plaintiff's Purchase of Full Action Is, in and of Itself, an "Actual Injury" Under FDUTPA

Defendant wrongfully contends that the purchase of a falsely advertised product is not an injury under FDUTPA.  Case law is legion with examples where *the purchase* of a deceptively advertized product, like Full Action, *is* the actual injury under FDUTPA where the product does not perform as advertised.  *See*, *e.g.*, *Wrigley*, 663 F. Supp. 2d at 1339-41 (plaintiff properly stated a FDUTPA claim for false advertisement on chewing gum label); *Scott v. Capital One Bank*, No. 8:08-cv-132-T-30EAJ, 2008 WL 2157037, at *1 (M.D. Fla. May 20, 2008) (denying motion to dismiss FDUTPA claim where allegation was that bank's "Payment Protection" plan "is virtually worthless due to numerous restrictions and bureaucratic hurdles placed in the path of participants seeking coverage."); *Veal v. Crown Auto Dealerships, Inc.*, 236 F.R.D. 572, 575 (M.D. Fla. 2006) (granting class certification in FDUTPA case where allegations included fact that "Etch" product sold to the class provided "very little or no benefit to the customer"); *Turner Greenberg Assocs., Inc. v. Pathman*, 885 So. 2d 1004, 1008 (Fla. 4th DCA 2004) (certifying class where "the alleged unfair or

8

deceptive trade practice was TGA's failure to disclose that the 'freight/insurance' charge included an element of profit"); *Collins v. DaimlerChrysler Corp.*, 894 So. 2d 988, 990-91 (Fla. 5th DCA 2004) ("Collins has alleged more than a possible injury. She claims an actual injury in the form of insufficient product value. In other words, she contends that she did not get what she bargained for."); *Powertel*, 776 So. 2d at 972-73 ("value" and capability of cellular telephones); *Anden v. Litinsky*, 472 So. 2d 825, 826 (Fla. 4th DCA 1985) (home building services).

Thus, Florida law is exactly the opposite of what Defendant contends it is. For that reason, and liberally construing FDUTPA to meet the public policy objectives of protecting consumers from deceptive advertisements, Plaintiff's purchase of Full Action alone is an actual injury under FDUTPA. This is so regardless of any factual disputes regarding a price premium or other damages theory that could be resolved at summary judgment or trial. In other words, because it is not true that Full Action "helps fight visible plaque above the gum line," Plaintiff did not get what he paid for and, thus, states a claim under FDUTPA.

### B.    Breach of Express Warranty

Plaintiff's second cause of action is for breach of express warranty. [Dkt. No. 1, ¶¶54-58]. The basis of Plaintiff's claim stems from the doctrine set forth by the Florida Supreme Court in *Hoskins v. Jackson Grain Co.*, 63 So. 2d 514 (Fla. 1953). In *Hoskins*, the Florida Supreme Court formulated a unique doctrine for warranty claims between consumers and manufacturers of foodstuffs where a particular foodstuff is sold to the consumer *via* a retailer or other conduit. 63 So. 2d at 515-16. Under the *Hoskins* doctrine, manufacturers are accountable for their warranties to consumers and can be sued for the recovery of monies paid pursuant to those warranties where the warranties are false, which is exactly Plaintiff's claim here. *Id.*

To be sure, manufacturers like Defendant have attempted to argue that a Plaintiff who purchases a foodstuff product from a retailer does not have sufficient privity of contract with the

manufacturer to sustain a breach of express warranty claim. Courts have rejected this argument, however. For instance, as this Court stated in *Wrigley* where the plaintiff alleged that there was a false advertisement on the defendant's chewing gum product,

> [I]t defies common sense to argue that purchasers of Eclipse gum presumed that the cashier at the local convenience store is familiar with the scientific properties of MBE. Second, it is significant that the express warranty the manufacturer allegedly breached is contained on the packaging of Eclipse gum. Moreover, the Complaint alleges that Plaintiff relied on the warranty when purchasing the gum. Accordingly, the Court finds that Plaintiff states a valid claim for breach of express warranty.

663 F. Supp. 2d at 1343; *accord. Grovenor House, LLC. v. E.I. Du Pont De Nemours & Co*., No. 09-21698 CIV, 2010 WL 883647, at *3 (S.D. Fla. Mar. 08, 2010); *Am. Coach Lines of Orlando, Inc. v. N. Am. Bus Indus., Inc*., No. 6:09-CV-1999-Orl-19GJK, 2010 WL 3958692, *9 (M.D. Fla. Oct. 08, 2010).

Therefore, the analysis for whether Defendant breached its express warranty to Plaintiff and the class is seamless with the issue of whether Defendant violated FDUTPA.

## V.     MEMORANDUM OF LAW

### A.     Plaintiff Does Not Seek to Stand in the FDA's Shoes

Defendant contends that Plaintiff is barred from bringing this action because, according to Defendant, Plaintiff is seeking to establish a private right of action for misbranding under the FDCA, 21 U.S.C. §§301, *et seq*. [Dkt. No. 21 at pp. 9-13]. Defendant contends that Plaintiff's complaint is premised upon the FDA's cease and desist letter to Defendant regarding the FDA's contention that Defendant falsely advertises sodium fluoride as helping "fight visible plaque above the gum line." Defendant is flat wrong.

Plaintiff's complaint is premised on the fact that the Full Action product does not help "fight visible plaque above the gum line." The FDA's perception of Defendant's use of the sodium fluoride ingredient is ultimately immaterial to Plaintiff's case. What the FDA's letter demonstrates

is a controversy surrounding this Full Action Gum Line Plaque Claim, which Plaintiff would have been remise not to include as background information in the complaint, given the Supreme Court's rulings in *Iqbal* and *Twombly*.

Plaintiff is not seeking to enforce the FDCA or act as the FDA. That is precisely why the case which Defendant trumpets, *Andrx Pharms. v. Biovail Corp.*, 175 F. Supp. 2d 1362 (S.D. Fla. 2001), has no applicability here. In *Andrx*, the plaintiff alleged certain claims which sought a private right of action under the FDCA and a private right of action under another federal statute. 175 F. Supp. 2d at 1369-70. It is for that exact reason the *Andrx* court dismissed those claims. *Id.*

In stark contrast to *Andrx*, Plaintiff is simply suing Defendant because the Full Action Gum Line Plaque Claim is false. Indeed, the FDA has not regulated the claim itself, but only has taken issue with its interpretation that Defendant is making the advertising claim that sodium fluoride "helps fight visible plaque above the gum line." In fact, Defendant implies that the FDA misunderstands the claim, since, according to Defendant, the product's other ingredients make the claim possible, not sodium fluoride. [Dkt. No. 21, at pp. 2-3, 16]. Regardless, Plaintiff's case is not about sodium fluoride or the FDA's view. Plaintiff's claim here is precisely the type of claim this Court held was proper in *Wrigley*, where the Plaintiff sued for false advertising of a bad breath claim that appeared on a label of chewing gum. *See Wrigley*, No. 9-CV-60646, [Dkt. No. 1, ¶14] (S.D. Fla. May 1, 2009) ("Now Eclipse contains a natural ingredient scientifically proven to help kill the germs that cause bad breath.").

Moreover, the instant case is directly in-line with the well-established precedent that a private plaintiff may sue for consumer fraud based upon claims made on a product's label that the FDA also has jurisdiction to regulate. *See*, *e.g.*, *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 701 F. Supp. 2d 356, 375 (E.D.N.Y. 2010) ("Although these statements touch on areas regulated by the FDA, and may even require reference to FDA definitions as to what the

requirements are for adequate sources of calcium and phytosterols and what the dangers of larger doses of aspirin are, they are not preempted."); *Jackson v. Balanced Health Prods., Inc.*, No. C 08-05584 CW, 2009 WL 1625944, at *4 (N.D. Cal. June 10, 2009) ("Plaintiffs allege that the inclusion of Bumetanide in StarCaps renders Defendants' advertising of the product as 'all natural' false and misleading. Simply alleging that StarCaps contains a prescription drug, Bumetanide, does not invoke federal pre-emption."); *In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*, 590 F. Supp. 2d 1282, 1291 (C.D. Cal. 2008) ("The simple fact that a matter touches upon an area dealt with by the FDA is not a bar to proceeding with a claim of fraud.").

The theory of Plaintiff's case is clear: "This is a traditional claim of consumer misrepresentation, not an attempt to enforce the FDCA's labeling requirements." *Bayer*, 701 F. Supp. 2d at 375.  Otherwise, "the FDA, not courts, would be responsible for resolving all questions of whether a statement made in connection with [product] advertising was false, misleading, or omitted a material fact." *Epogen*, 590 F. Supp. 2d at 1292.

It is for that reason that Defendant's reliance on *Loreto v. Procter & Gamble Co.*, --- F. Supp. 2d ----, No. 1:09-cv-815, 2010 WL 3471752, at *1 (S.D. Ohio Sept. 3, 2010), is misplaced.  In *Loreto*, the plaintiffs asserted a cause of action based on Procter & Gamble's claim regarding the effectiveness of vitamin C for Dayquil and Nyquil products.  Unlike the Full Action Gum Line Plaque Claim at issue in this case which does not reference any chemical element, each of the claims at issue in *Loreto* literally had "vitamin c" imbued within them:

| Claim at Issue in this Case | Vitamin C Claims at Issue in *Loreto* |
| --- | --- |
| Full Action "Helps fight visible plaque above the gum line" | <ul><li>Combining the powerful multi-symptom relief of DayQuil with more than 150% of the recommended value of vitamin C.</li><li>VICKS NyQuil Cold & Flu Symptom Relief Plus Vitamin C provides multi-symptom cold and flu relief so you can get the sleep you need to enjoy an even sweeter tomorrow. Plus, you'll also replenish your body with 150% of the daily value of vitamin C.</li></ul> |

| | |
|---|---|
| | • Fortify Your Household for the Cold and Flu Season. . . . Vitamin C: It won't cure a cold, but vitamin C can help blunt its effects. Aim for 500 mg a day. |
| | • Fighting Cold and Flu Season. . . . Don't forget to take your daily vitamins. Consider taking extra vitamin C, vitamin A, and zinc, all of which may help you. |
| | • New Vicks DayQuil Plus Vitamin C. Now you can get multi-symptom relief with DayQuil and help replenish your body with 150% of the daily value of vitamin C. For nighttime relief, try new Vicks NyQuil Plus Vitamin C. |
| | • Now I'm especially excited because Vicks is bringing together DayQuil and NyQuil, to help relieve multiple cold symptoms, with Vitamin C to replenish what your body needs. |

Thus, the claims in *Loreto* were about Procter and Gamble's position on what vitamin C can or cannot do and, in turn, based upon the FDA's determination that Procter and Gamble's "studies do not contain sufficient detail to assess their value in establishing the effectiveness of [vitamin C] in reducing the duration or symptoms of the common cold." *Loreto*, 2010 WL 3471752, at *9. Because there was no difference in what the FDA determined and what the *Loreto* plaintiffs were asking the court to determine, the *Loreto* court found that such a challenge is within the exclusive province of the FDA to regulate, not private plaintiffs *vis-à-vis* courts of law. *Id.* at *9-10. In other words, "because the substance of Plaintiffs' claims seek to assert a private right of action under the FDCA, they must be dismissed." *Id.* at *10.

In contrast to *Loreto*, Plaintiff's case is not about the FDA's position regarding whether sodium fluoride "helps fight visible plaque above the gum line" Plaintiff is not alleging that Defendant falsely advertises that sodium fluoride has this property. This case is instead about whether the Full Action Gum Line Plaque Claim is true. Indeed, Defendant argues in its brief that it does not even claim that sodium fluoride "helps fight visible plaque above the gum line." Defendant instead contends that sodium fluoride "helps prevent cavities," and that the Full Action Gum Line

13

Plaque Claim is true because of the other ingredients in the product. [Dkt. No. 21, at pp. 2-3, 16]. At bottom, therefore, Defendant is setting up a straw-man argument to analogize the FDA's view on sodium fluoride to the FDA's view on Vitamin C in *Loreto* since, according to Defendant, Defendant is not making any claim that sodium fluoride "helps fight visible plaque above the gum line."

> **B.      Plaintiff Has Standing to Bring His Lawsuit and has Alleged an Injury-in-Fact**

Defendant contends that Plaintiff lacks standing to sue because, according to Defendant, Plaintiff "received exactly the product that he bargained for," [Dkt. No. 21, at p. 14], and because Plaintiff "does not allege that he actually saw the 'Helps fight visible plaque above the gum line' claim." [Dkt. No. 21, at p. 15]. Defendant has misread Plaintiff's complaint.

Plaintiff plainly alleges that he "was exposed to Full Action advertising claims, purchased Full Action and suffered injury in fact and lost money as a result of the unfair trade practices described herein." [Dkt. No. 1, ¶17]. Plaintiff has expressly pled that the Full Action Gum Line Plaque Claim caused him damage. [Dkt. No. 1, ¶51]. As stated above, Plaintiff's purchase of the deceptively-advertised product is the injury because, contrary to what Defendant contends, Plaintiff did not get what he paid for. Full Action does not "help fight visible plaque above the gum line," as it is advertised to do. Thus, Plaintiff was deceived and damaged by his purchase of Full Action because of this false claim.

To be sure, the antiplaque claim for Defendant's Antiseptic product is not the same claim as antiplaque claim at issue here. Certainly, Defendant attempts to muddy these waters by stating, "Full Action contains the same antiplaque ingredients as contain in Walgreens Antiseptic Mouth Rinse, but also – unlike Antiseptic Mouth Rinse – contains sodium fluoride and provides an anticavity benefit." [Dkt. No. 21, at p. 16]. But this Court should not countenance Defendant's attempt to play coy and imply that it advertises the same antiplaque claim for its Antiseptic product as it does for Full Action. The antiplaque claims for these products ***are not the same***. For

Defendant's Antiseptic product, the claim is, "Kills germs that cause bad breath, plaque and the gum disease gingivitis." [*See infra* at p. 4]. For Full Action, the claim is, "Helps fight visible plaque above the gum line." [*Id.*]. Defendant does not advertise its Antiseptic product with the "Helps fight visible plaque above the gum line" claim. Perhaps more importantly, Defendant does not – because Defendant cannot – contend that its Antiseptic product helps fight visible plaque above the gum line. This claim is unique to Full Action, and is the reason why Defendant is charging a price premium. Moreover, as Plaintiff alleges, the claim is not true.

At bottom, Plaintiff brings this lawsuit on behalf of Florida consumers who have purchased Defendant's Full Action product, which has been falsely advertised and sold in violation of Florida law.

## VI.   CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff respectfully asks this Court to deny Defendant's motion to dismiss in its entirety.

DATED:  February 3, 2011                          ROBBINS GELLER RUDMAN & DOWD LLP
                                                  STUART A. DAVIDSON
                                                  FLORIDA BAR NO. 084824
                                                  CULLIN A. O'BRIEN
                                                  FLORIDA BAR NO. 597341
                                                  MARK J. DEARMAN
                                                  FLORIDA BAR NO. 982407


                                                           *s/ Cullin A. O'Brien*
                                                  CULLIN A. O'BRIEN

                                                  120 E. Palmetto Park Road, Suite 500
                                                  Boca Raton, FL  33433
                                                  Telephone:  561/750-3000
                                                  561/750-3364 (fax)
                                                  sdavidson@rgrdlaw.com
                                                  cobrien@rgrdlaw.com
                                                  mdearman@rgrdlaw.com

                                                  Attorneys for Plaintiff and the Class

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 3, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on February 3, 2011.

*s/ Cullin A. O'Brien*
CULLIN A. O'BRIEN
ROBBINS GELLER RUDMAN & DOWD LLP
E-mail: cobrien@rgrdlaw.com